## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAQUELINE S. SCHNEIDER,**

        **Plaintiff,**

**v.**                                                         **Case No. 8:16-cv-338-T-30TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

                                        /

## REPORT AND RECOMMENDATION

        Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits. Because the decision of the Commissioner of the United States Social Security Administration ("SSA") is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be **reversed and remanded** for further consideration.

## I.

        Plaintiff protectively applied for disability benefits in June 2012, alleging disability as of June 6, 2012, by reason of spinal stenosis, herniated discs, depression, interstitial cystitis/painful bladder syndrome, chronic anemia, chronic fatigue, asthma, vulvodynia, and vulvular vestibulitis. (R. 161, 165). Plaintiff's application was denied originally and on reconsideration. (R. 80-81, 88-89).

        Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"), which was held June 11, 2014. (R. 40-54). Plaintiff, who was represented by counsel, testified

she was forty-seven years old, had an associates degree in respiratory therapy and certification

as a nursing assistant, and stopped working in June 2012.  In essence, Plaintiff testified she was

unable to work because of back pain, severe bladder pain, fibromyalgia, chronic joint pain,

osteoarthritis in her shoulders, fatigue, and depression.[1]  (R. 43-53).

A vocational expert was present at the hearing, but did not testify.

By decision dated July 25, 2014, the ALJ found that while Plaintiff has severe

impairments related to asthma, degenerative disc disease, interstitial cystitis ("IC"),[2] painful

bladder syndrome, chronic vulva pain, anemia, atypical chest pain, obesity, and diabetes, she

nonetheless had the residual functional capacity ("RFC") to perform a full range of sedentary

work.  Upon this finding and application of Rule 201.21 of the Medical-Vocational Guidelines

(the "grids"), the ALJ concluded that Plaintiff was not disabled.  (R. 23-34).

The Appeals Council denied Plaintiff's request for review (R. 1-5), and the ALJ's

decision became the final decision of the Commissioner.

## II.

Entitlement to disability benefits requires the claimant to establish that he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[1]Also before the ALJ were medical records outlining Plaintiff's medical history.  Such matters are addressed herein as necessary.

[2]"Interstitial cystitis (IC) is a condition that results in recurring discomfort or pain in the bladder and the surrounding pelvic region.  The symptoms vary from case to case and even in the same individual.  People may experience mild discomfort, pressure, tenderness, or intense pain in the bladder and pelvic area.  Symptoms may include an urgent need to urinate, a frequent need to urinate, or a combination of these symptoms." https://www.niddk.nih.gov/health-information/health-topics/urologic-disease/interstitial-cystitis-painful-bladder-syndrome/Pages/facts.aspx (last visited Jan. 5, 2017).

physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months...."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  Under this five-step sequential evaluation, the ALJ considers:  (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the listing of impairments; (4) if not, whether the claimant has the RFC to perform his or her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* at § 404.1520(a)(4)(i)-(v).  The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step.  *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court

reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

### A.

Plaintiff raises three claims on appeal. As stated by Plaintiff, they are:

(1)     The ALJ committed reversible error by not applying Social Security Ruling ("SSR") 02-2p in his disability evaluation;

(2)     The ALJ failed to find that Plaintiff meets or equals Listing 12.04; and

(3)     The ALJ's finding that Plaintiff can perform sedentary work is not based on substantial evidence.

4

(Doc. 14).

Each claim challenges an aspect ALJ's consideration of Plaintiff's IC and related symptoms. *Id.*

First, Plaintiff argues that the ALJ failed to properly consider her IC at each stage of the sequential evaluation process in accordance with the requirements of Social Security Ruling (SSR) 02-2p.[3] She concedes the ALJ found the condition a severe impairment at step two, but contends he thereafter failed to discuss it until addressing her credibility. Further, she contends her allegations of frequent urination, pelvic pain, rarely leaving home, and limitations in standing, sitting, bending, leaning, and walking are consistent with those addressed in SSR 02-2p and should have been considered. (Doc. 14 at 5-6).

Next, Plaintiff argues the ALJ erred by "failing to evaluate her IC under step 3 of his evaluation and in determining that her mental impairments were not severe." She contends her combined impairments, including IC, generalized anxiety disorder, depression, and ADHD equal the listing at 12.04,[4] and the ALJ failed to consider her IC in connection with his finding that her impairments failed to meet or equal any listed impairment. (Doc. 14 at 6-7).

───────────────

[3]SSR 02-2p provides guidance on the Social Security Administration's (SSA) policy concerning the development and evaluation of interstitial cystitis in disability claims. *See* SSR 02-2p, 2002 WL 32063799 (Nov. 5, 2002). As the parties recognize, SSR 02-2p was in effect at the time of the ALJ's decision. Effective March 18, 2015, the SSA rescinded and replaced SSR 02-2p with SSR 15-1p. *See* SSR 15-1p, 2015 WL 1292257, at *1 (Mar. 18, 2015).

[4]Specifically, Plaintiff contends that she meets the "A" criteria of the listing because of her change of weight, decreased energy, difficulty concentrating, psychomotor agitation, and sleep disturbance, and she meets the "B" criteria of the listing because she has marked limitations in activities of daily living and difficulties maintaining social functioning.

Lastly, Plaintiff argues the ALJ's RFC finding for a full range of sedentary work is not supported by substantial evidence.  In particular, Plaintiff contends the ALJ failed to consider significant limitations when determining her RFC, namely, that her chronic pain was severe enough to interfere with attention and concentration needed to perform even simple work tasks and her need for restroom breaks ten to sixteen times a day when experiencing a flare about twenty days a month.[5]  Moreover, Plaintiff contends that even if she had the capacity for sedentary work, she could not sustain work activities on a regular and continuing basis with those limitations.  She urges that had the ALJ properly assessed and included these symptoms in her RFC, she would be incapable of work.  (Doc. 14 at 7-9).

In response, the Commissioner begins by urging that Plaintiff fails to prove her IC is as debilitating as she claims or that it was not properly assessed by the ALJ.  The Commissioner asserts that the ALJ considered Plaintiff's subjective claims as well as the records from Drs. Piorkowski and Gapin in arriving at his RFC determination.  She notes the ALJ's findings that Plaintiff had a thirty-year history of IC, there appeared to be no connection with the condition and her alleged onset date of June 6, 2012, and her work history, or lack thereof, suggested the lack of work was not connected to disabling symptoms from IC.  As such, she urges the ALJ properly considered the record evidence and determined Plaintiff retained the RFC to perform the full range of sedentary work.  (Doc. 15 at 6-10).

The Commissioner concedes that the ALJ did not reference SSR 02-2p but argues that alone does not warrant relief.  Consistent with the ruling, she contends the ALJ found Plaintiff's

---

[5]Plaintiff contends the limitations are supported by the reports from her urologist, Tracy Gapin, M.D., and her counselor, Krystyna J. Piorkowski, Ph.D.

IC to be a severe impairment at step two and addressed it in connection with the RFC finding at steps four and five. She notes that in doing so, the ALJ cited the lack of medical evidence supporting a worsening of the condition or a deteriorating effect on her abilities, and how the condition contributed to the alleged onset date. She urges that Plaintiff simply fails to show that the ALJ committed any err under SSR 02-2p. (Doc. 15 at 11-12).

Next, the Commissioner urges Plaintiff fails to prove that her IC and mental impairments equal the criteria required to satisfy the listing at 12.04. Specifically, she contends that the evidence on which Plaintiff relies does not provide corroborative clinical and laboratory findings required under paragraph A of the listing, and neither Plaintiff's testimony nor Dr. Gapin's opinion establishes the paragraph B criteria of the listing. (Doc. 15 at 12-18).

Finally, she urges that because the ALJ properly determined Plaintiff could perform the full range of sedentary work, it was appropriate for him to rely on the grids for decision instead of obtaining vocational expert testimony. (Doc. 15 at 18-21).

**B.**

At the administrative hearing, Plaintiff testified IC was one of her two main problems. She described it as coming on without warning, causing excruciating pain after urinating, urinary urgency, and urinary frequency. Plaintiff stated that although it did not affect her everyday, it "flares" about twice a month for approximately twenty days total. She said that during a flare, she will go to the bathroom about ten to sixteen times a day. And, if it is really bad, she said she will sit in the bathroom for hours. Plaintiff also testified that she sleeps a lot and rarely leaves the house because she is depressed. She reported she does not sleep well, is tired and exhausted,

and has brain fog and joint pain, which she attributes to fibromyalgia.  According to Plaintiff, her ability to sit, stand, walk, lift, and carry are all significantly limited.  (R. 43-53).

The ALJ found that Plaintiff's IC and painful bladder syndrome constituted severe impairments under the Act at step two, citing her lengthy history of treatment and ongoing treatment and record support for pelvic pain, urinary frequency, and vulvodynia or vulvular vestibulitis.[6]  (R. 25).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (R. 27).  He also specifically evaluated several listings, and considered diabetes, obesity, chronic anemia, and vulvodynia, and again noted only mild mental limitations.  (R. 27-28).

At step four, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work.[7]  (R. 28, 30).  In doing so, he considered Plaintiff's subjective allegations, the whole of the medical evidence, and opinion evidence from treating doctors.

---

[6]The ALJ found that fibromyalgia was not a medically determinable impairment because the record failed to document its specific signs, including eleven tender points.  (R. 26).  The ALJ found that Plaintiff's mental impairments (depression, anxiety, and ADHD) were medically determinable impairments, but concluded they were non-severe because they did not result in more than mild limitations in any of the three functional areas.  (R. 26-27).

[7]"Sedentary work" involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §404.1567(a).  SSR 83-10 elaborates on the definition of sedentary, providing that "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

As related to IC, the ALJ recounted that Plaintiff testified to serious bladder problems with painful urination, that she "suggested" that sitting causes bladder and back pain, and alleged she could sit and stand for only forty minutes at a time.  He found, however: "treatment notes fail to support this level of limitation and treating sources stated clinical and laboratory testing failed to show 'anything terribly significant;'" Plaintiff's statement that her chronic pain improved with rest suggests she can tolerate sitting; and the only restrictions noted after undergoing a hysterectomy were pelvic rest and no heavy lifting for six weeks, which suggests Plaintiff could sit despite her pelvic pain.  (R. 29-32).

The ALJ also noted that Plaintiff's testimony "touched on [her] 30-year history of interstitial cystitis," stating:

> During this 30-year history, she did not work at a significant level.  In fact, she reported no earnings from 1996 to 2001 and through 2012 only neared substantial gainful work activity one time.  This information suggests the claimant's lack of work activity is not clearly from the onset of disabling limitations.  Likewise, there is no event to explain her alleged onset date, nor does the record support deterioration in ability over time.  Indeed, there is nothing to explain a worsening in the claimant's interstitial cystitis around or after her alleged onset date.  In fact, the claimant's long history with this impairment erodes the likelihood that it resulted in disability starting on June 6, 2012.  This fact is similar with the claimant's other severe impairments as well.

(R. 29).

The ALJ also addressed Plaintiff's treatment records for IC and urinary frequency, which included undergoing a cystoscopy, hydrodistention, and placement of a suprapubic catheter, as well as multiple prescription medications.  (R. 30-31).  He noted that testing revealed a normal appearing bladder, and while Plaintiff complained of abdominal pain, urinary problems

including frequency, and fatigue over the years, the record also documented many instances where Plaintiff denied the same. (*See* R. 30-32). He further noted that while Plaintiff reported abdominal pain in May 2013, treatment notes indicated that her "doctors could not find 'anything terribly significant' after testing and, as a result, could not identify treatment options." (R. 31-21). Lastly, the ALJ referenced a treatment record noting Plaintiff appeared comfortable, which in his view suggested her reports of pain were embellished. (R. 32).

Regarding the "opinion evidence," the ALJ addressed the function report from Plaintiff's treating urologist, Dr. Gapin. He gave the report "some weight," noting that it was incomplete and did not include a functional assessment. He found, however, that Dr. Gapin "confirms the claimant's pain and urinary frequency."[8] (R. 33).

Overall, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but her allegations were not fully persuasive in light of her activities of daily living and objective medical evidence, all of which suggested a greater functional capacity than alleged by Plaintiff. (R. 29, 33).

## C.

For the reasons that follow, I find the ALJ's analysis of Plaintiff's IC and related symptoms was not adequate and remand is required.

The ALJ failed to address or even mention SSR 02-2p – the IC ruling in effect at the time of his decision. While the Commissioner's rulings are binding on all components of the

---

[8]The only other "opinion evidence" the ALJ addressed were the treatment notes and GAF scores reported by Plaintiff's treating mental health provider. (R. 33).

SSA,[9] the parties correctly note that failure alone does not constitute reversible error. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).[10]

Nonetheless, contrary to the Commissioner's urging, the ALJ's consideration of Plaintiff's IC throughout the sequential evaluation process is problematic.[11] While I find no error in the decision at step three given the language utilized by the ALJ, it is not clear whether he did in fact consider the import of IC at step three.

More significant is the ALJ's seeming failure to recognize and apply the policy considerations and guidance expressed in the rulings. SSR 02-2p explains that IC is a "complex, chronic bladder disorder" that can be the basis for a finding of disability when accompanied by appropriate symptoms, signs, and laboratory findings. SSR 02-2p, 2002 WL 32063799, at *1. It is "characterized by urinary frequency, urinary urgency, and pelvic pain" and "may be associated with ... fibromyalgia ... and vulvodynia...." SSR 02-2p, at *1. Although symptoms vary in both kind and intensity, "[t]he three most common symptoms are an urgent need to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder and surrounding pelvic region." *Id.* at *2. Treatment is directed toward symptom relief, and the response to treatment varies. *Id.* at *1.

---

[9]*See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990).

[10]The Eleventh Circuit, in an en banc decision, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[11]The Commissioner correctly notes the ALJ considered Plaintiff's IC at step two and when assessing her subjective complaints and RFC at step four. However, as set forth below, his step four consideration was inadequate.

The ruling cautions that "[a]n assessment should be made of the effect [interstitial cystitis] has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," noting that interstitial cystitis can affect the ability to focus and sustain attention on the task at hand due to chronic pelvic pain, can lead to drowsiness and lack of mental clarity during the day because of nocturia (nighttime urinary frequency) disrupting sleep patterns, or the presence of urinary frequency can necessitate trips to the bathroom as often as every ten to fifteen minutes, day and night. *Id.* at *5-6.

Here, the ALJ erred by failing to address with specificity Plaintiff's allegations of frequent urination (ten to sixteen times a day during a flare) and attention and concentration difficulties due to pelvic or other chronic pain. And, because these allegations were not addressed, it is not possible to ascertain whether substantial evidence supports the ALJ's determination that Plaintiff retained the RFC to perform the full range of sedentary work (or whether such decision could be reached in the absence of vocational expert testimony).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all the evidence of record and all of the claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. § 404.1545(a)(3).

Subjective complaints are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005).  Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).[12]  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole."  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

As urged by Plaintiff, I cannot determine whether the ALJ fairly considered all of Plaintiff's subjective allegations with regard to IC.  As indicated above, the primary complaints Plaintiff attributed to this impairment were urinary frequency and abdominal and pelvic pain. Because the ALJ appears to have considered and accepted Plaintiff's testimony with respect to urinary frequency, as well as Dr. Gapin's opinion that Plaintiff does indeed suffer from both, he should have specifically addressed how the need to use the restroom ten to sixteen times a day for approximately twenty days a month would affect her RFC and ability to work.  Yet, the ALJ made no finding as to the limitations imposed by the frequency of urination.

---

[12]Where such showing is made, the ALJ then must evaluate the intensity and persistence of the symptoms to determine how such limit the claimants capacity for work.  20 C.F.R. § 404.1529(c).  Relevant factors in this consideration include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history.  *Id.*

As for pelvic and abdominal pain, I find that substantial evidence does not support the ALJ's reasons for discounting Plaintiff's allegations that she could sit and stand for only forty minutes at a time.  First, it does not appear that pelvic or abdominal pain and back pain were considered together in assessing her ability to sit; the ALJ addresses them separately.  (R. 29-30). Next, to the extent that allegation was found to be consistent with sedentary work, absent a sit/stand option, it is not.  Further, although the ALJ stated the record suggests Plaintiff can sit without difficulty, the references and citations made in support do not bear that out.  That a check-marked box indicated Plaintiff's chronic pain improved with rest simply does not equate with the ability to sit for six hours out of an eight hour day.  Nor do post-hysterectomy limitations for only pelvic rest and no heavy lifting and that Plaintiff could sit comfortably in a chair at a doctor's office.

Lastly, the ALJ's repeated reference to one doctor's record in 2013 noting that Plaintiff underwent extensive testing with a gastroenterologist but testing did not show anything terribly significant and that there were few treatment options does not undercut the entirety of Plaintiff's subjective allegations.  As recognized by the SSA, pain related to IC may limit an individual's exertional functions such as standing and walking.  *See* SSR 02-2p, 2002 WL 32063799, at *5. My review of the decision also fails to reveal full and fair consideration of medical records related to such.  For these reasons, remand for further consideration is warranted.[13]

---

[13]Notably missing from the decision is consideration of Plaintiff's subjective complaints of fatigue and difficulties with attention and concentration.

**D.**

Because remand is required on the above grounds, Plaintiff's other claims need not be addressed.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986).  Nonetheless, I find it prudent to note the following.

Regarding Plaintiff's challenge to the ALJ's finding that her medically determinable medical impairments were non-severe, the Commissioner is correct that there was no step-two error because the ALJ found other severe impairments.  However, in light of the guidance provided in the IC rulings regarding the interplay between IC and depression, attention difficulties, and isolating behavior, and the bulk of Plaintiff's mental health treatment with Dr. Piorkowski post-dating the opinions of the state agency psychologists, the severity and limiting effects, if any, of Plaintiff's mental impairments should be revisited on remand.

And, as an example of the difficulty resulting from the record review in the decision, my own review of the record reveals arguable inconsistencies with the ALJ's RFC assessment. The inconsistencies call into question the propriety of the ALJ's decision to not obtain testimony from a vocational expert.[14]  For instance, the ALJ found Plaintiff's asthma was a severe impairment yet failed to address the environmental limitations noted by the only doctor, albeit a nonexamining doctor, to proffer an opinion on Plaintiff's functional capacity.  (*See* R. 76-77). By this doctor's opinion, Plaintiff needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  Whether or not this would change the RFC is unclear and not for the Court to state.  However, the limitation itself should have been addressed.

---

[14]This is compounded by the fact that neither party mentions these problems.

Another example is the ALJ's consideration of Plaintiff's fibromyalgia.  As indicated above, although it was a record diagnosis the ALJ found that it was not a medically determinable impairment because the requisite tender point evaluation was not performed or documented.  According to the Commissioner's own ruling, however, there are two sets of diagnostic criteria that can establish fibromyalgia as a medically determinable impairment, only one of which requires evidence of positive tender points.  *See* SSR 12-2p, 2012 WL 3104869, at \*2-3 (Jul. 25, 2012).  Indeed, SSR 12-2p specifically states that the second set of diagnostic criteria can be used to determine that fibromyalgia is a medically determinable impairment "if the case record does not include a report of the results of tender-point testing, or the report does not describe the number and location on the body of the positive tender points."[15]  *Id.* at \*3, n.6.  Significant to this case is that the IC rulings advise that fibromyalgia is often a coexisting condition, and many of Plaintiff's alleged symptoms were discounted due to somewhat benign findings or lack of objective evidence, which often is the hallmark of fibromyalgia.  *See Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63-64 (11th Cir. 2010) (explaining that both the diagnosis of fibromyalgia and the severity of the limitations it causes in a particular case are often determined on the basis of an individual's described symptoms).  Consequently, consistent with SSR 12-2p, the ALJ should consider whether Plaintiff established fibromyalgia as a medically determinable impairment under the second set of diagnostic criteria.

---

[15]Of note, many of Plaintiff's symptoms appear to fit this criteria.  *See* SSR 12-2p, at \*2-3 and n.9-10 (addressing fibromyalgia symptoms and co-occurring conditions).

Finally, while I make no finding on the ultimate determination by the ALJ based upon his reliance on the grids, I think the circumstances of this case suggest that vocational expert testimony may well be necessary to an informed and proper decision.

### IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be **REVERSED and REMANDED** for further proceedings before the Commissioner consistent with this Report and Recommendation.

I further recommend that the Clerk be directed to enter Judgment in favor of Plaintiff and to close the case, the matter of fees and costs to be addressed upon further motion.

Respectfully submitted this
5th day of January 2017.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of record